J. CALVIN CARNEY, Trustee, *v.* F. LEONARD MAAS et al.

HENRY L. MAAS *v.* F. LEONARD MAAS et al.
[Nos. 112, 113, October Term, 1933.]

*Decided January 30th, 1934.*

The causes were argued before BOND, C. J., URNER, ADKINS, OFFUTT, and SLOAN, JJ.

*Randolph Barton, Jr.,* and *R. Contee Rose,* with whom was *J. Calvin Carney* on the brief, for the appellants.

*Eugene Frederick,* for the appellees.

URNER, J., delivered the opinion of the Court.

The decree under review in this case enjoined perpetually the foreclosure of a mortgage and directed its release. Appeals from the decree were entered both by the mortgagee and by the trustee appointed to make the sale which the mortgage authorized. The mortgagee is Henry L. Maas, a building contractor, and the mortgagors are his son, F. Leonard Maas, and the latter's wife. A loan of $5,000 from the father to the son is secured by the mortgage, which was executed on April 13th, 1926. Leonard Maas and his brother Bernard were employed by their father in his business on a salary and commission basis of compensation for a number of years prior to 1929. In the early part of that year the business was incorporated. The capital stock of the corporation consisted of 500 shares of no par value. The principal incorporator, Henry L. Maas, retained 498 of the shares, and to each of his sons, Leonard and Bernard, one share was allotted. Henry L. Maas became president of the corporation, Bernard Maas its vice-president and treasurer, and Leonard Maas its secretary. The three stockholders and officers were also the directors of the corporation. A written agreement into which they entered on February 27th, 1929, referred to the recent incorporation of the business under the name of "Henry L. Maas & Sons, Inc.," and stated the wish of Henry L. Maas, in recognition of the services of his sons, Bernard and Leonard, in building up and extending the

business, to provide that they should own it in corporate form after his death. Provision to that end was made by the agreement, subject to the qualification that, if either of the sons should die or voluntarily sever his connection with the company during the father's lifetime, the rights and interests which the agreement conferred upon the son so retiring or dying should cease to exist, and that if Henry L. Maas should at any time or for any reason desire either of his sons to retire from the business, the one so requested should promptly resign from his connection with the company and, upon the payment of $10,000 to him by Henry L. Maas, should forfeit his interest under the agreement and in the corporate stock and enterprise.

The weekly salaries paid the officers of the corporation were $100 to Henry L. Maas as president, $75 to Bernard Maas as vice-president and treasurer, and $85 to Leonard Maas as secretary. In addition, each was to receive a share of the net profits, the proportion for each being ten per cent. originally, but later increased to twenty, and finally to thirty per cent. As against profits anticipated in 1931, from construction contracts in course of performance, there was a provision made for the future payment of $10,000 to each of the officers in addition to his regular salary. A demand note to each of them for that amount, without interest, was executed by the corporation under date of September 27th, 1931, but all three of the notes were kept in the president's custody. On February 8th, 1932, Leonard Maas withdrew from the corporation and subsequently brought suit on the undelivered note for $10,000 payable to his order, after he had made a futile request for its delivery. In aid of that suit he filed a petition for the production of the note. Those proceedings provoked action by Henry L. Maas for the collection of the overdue mortgage, with which the present case is mainly concerned.

The mortgage foreclosure suit was instituted on June 22nd, 1932. Later on the same day Leonard Maas visited his father and had an interview with him, in which they are said by the former to have reached an agreement that the enforce-

ment of the mortgage should be discontinued in considera-
tion of the dismissal of his suit on the note for $10,000, and
that the $5,000 mortgage debt should be applied on its pay-
ment. It was denied by Henry L. Maas that he agreed to
such an application of the mortgage, and his version of the
agreement was simply that he "would hold the proceedings
of the foreclosure up and pay the costs of it", and that his
son Leonard would withdraw his suit "until the work was
finished." The testimony of the father is consistent with
what we regard as the convincing evidence in the record that,
until the completion of the work to which he referred, the
right of his son to collect the note in question was uncertain
and contingent. It is clear that his right to enforce it was
subject to the same conditions applying to the similar notes
of the corporation made payable respectively to his father
and brother. All were alike dependent for their enforce-
ability upon earnings from work still in progress. There
were several such projects unfinished when the notes were
authorized, and one of them was yet incomplete when the
institution by Leonard Maas of a new suit on the note in-
tended for his contingent benefit resulted in the further fore-
closure proceedings which the decree below enjoined. Act-
ual losses were sustained in the operations from which profits
applicable to the notes were expected. It was stated by
Leonard Maas, in his petition for the production of the note
on which his suit was based, that the three notes, of which it
was one, were to be held by his father "until such time as the
corporation could retire said notes without unduly impairing
its working capital, and until the receipt of certain income
from contracts then approaching completion." The petition
alleged that such income had since been received, but proof
as to losses on the contracts refuted that statement. None of
the notes can be paid in accordance with the understanding
as to the source of the funds to be available for that purpose.
The corporation is now in receivership because of its insol-
ency. Upon the evidence we do not feel justified in holding
that the note against which the mortgage of the appellees is

claimed to be chargeable was intended to represent an absolute rather than a qualified and contingent liability.

The conclusion we have reached upon that fundamental issue of fact makes it unnecessary to discuss other questions to which the argument extended.

In our opinion the appellees were not entitled to the relief prayed in their bill of complaint.

*Decree reversed, with costs, and bill dismissed.*